Case number 20-1093 et al. Vecinos para el Bienestar de la Comunidad Costera et al, Petitioners, versus Federal Energy Regulatory Commission. Mr. Matthews for the Petitioners, Mr. Edinger for the Respondents. Good morning, Council. Mr. Matthews, when you're ready, please proceed. Thank you, Your Honor. Nathan Matthews arguing on behalf of Petitioners, Vecinos para el Bienestar de la Comunidad Costera, City of Port Isabel et al. Today's cases challenge FERC's simultaneous approval of three neighboring liquefied natural gas, or LNG, export terminals. Cases 10-93 and 1094 concern the smaller of these two, the Inova and Texas LNG projects, but these projects are large in their own right and contribute to significant cumulative impacts. And our claims in these first cases also apply to the third project, Rio Grande, which we'll be arguing separately. I'd like to briefly discuss our four claims presented in these cases. I'd like to note first that yesterday, the proponents of the Inova project announced that they're seeking to withdraw their FERC certificate. So I'm therefore going to focus on the Texas project, although the claims are similar. And as I'll explain, assuming the certificate is withdrawn, that won't influence the other claims in these cases. And I can shrug it off. Can you first address whether, if the Inova project is withdrawn, does that render this petition moot or unripe? Do we still have jurisdiction? For the case specifically against Inova, I think that if that petition is withdrawn, I have not conferred with the parties, but I imagine we would all agree that the case against Inova 1093 becomes moot. That would not render the challenge to FERC certificate for the Texas LNG project, which was a separate case that was consolidated and considered a separate certificate. That case is not moot, nor is the case against the Rio Grande certificate. But isn't, I mean, to the extent that a great deal of your challenge deals with cumulative impacts of the projects, and that's the way that the environmental impact statement was drafted, why, I mean, why should we go forward with evaluating an environmental impact statement that may actually be obsolete and that FERC may choose to redo? If FERC were to announce for the other projects that it was withdrawing the certificates for the Texas and the Rio Grande projects to reconsider its analysis in light of the potential cancellation of the Inova project, then FERC's action to withdraw the certificates for the other projects, I suppose, might render those other cases moot. But as of right now, FERC has outstanding certificates for the Rio Grande and the Texas projects that would allow construction to proceed on those projects. And if that construction proceeds, that will harm the petitioners I represent here. And I might also be able to illustrate that the cumulative impacts analysis doesn't change that drastically. Looking at ozone, the Inova project was responsible for about 7% of the ozone precursor emissions that FERC considered in its cumulative impact analysis. So using the methodology that FERC used to calculate potential ozone impacts, subtracting Inova out means an increase of 18 parts per billion rather than 19 and change. It still causes a potential cumulative ozone levels to exceed 75 parts per billion, which is far greater than the 70 part per billion standard set by the National Ambient Air Quality Standard. So we still have serious concerns about the cumulative impact of just the other two projects, even if Inova doesn't go forward. Thank you. Somewhat relatedly, there is the change in the design of the project since your briefs were filed. And I understand that change is itself the subject of an appeal that you filed in this court as well. So why should we deal with the project design objections you've made since the design has changed and your court is going to hear the So that there hasn't been a change in the design of the Texas or the Inova projects that are in the cases. Yes, it's the Rio Grande. Yeah, so I'm happy to discuss that now, or we can discuss Rio Grande separately if that case is going to get argued separately. We are concerned that the proposed changes in design, even if they are adopted, don't actually resolve our concerns that FERC has approved. They changed the thing to which you are objecting. I don't know if they exacerbate your concerns or mitigate them, but it's a different situation. It doesn't resolve our concern. One of our claims, we also believe that FERC lacks jurisdiction to approve that change. That's an argument you'll make in your appeal of that. That's correct. We are also concerned, though, that FERC has, you know, as of right now, we have a lot of concerns with the design of the certificate as it has been approved that FERC's decision was improper when issued, and not all of those claims are impacted by the change in design. The change in design reduces the scale of the project by going from six trains to five, right? That reduces the footprint. Well, it reduces the amount of construction for the project. One of our concerns is they haven't actually reduced the project footprint. It doesn't reduce impacts related to marine vessel traffic because they're still planning to export the same amount of liquid natural gas, and many of our concerns have to do with the ships moving through the that the ships are not within our jurisdiction, or within the FERC's jurisdiction, let's say. Just assume that for the minute, I know it's contested. No, we did not believe that the change in design renders the challenge to the Rio grant certificate moot, and I don't believe— I mean, basically, all we know about the change in design here is what we know from the 328J letters, correct? That's correct. Yeah, and the document, the FERC document approving the change. So you want us to address a situation that has changed to some degree, about which we know little, and about which there will be a full development in a case coming along pretty soon. Well, I don't believe that any of the parties in their 28J letters contended that those changes actually fully mooted out the Rio Grande case. Well, it might be more, it might be a matter of ripeness, but, pardon me, it's just asking the court to address something that no longer, no longer matters to the same degree, and that will be addressed elsewhere. And if the direction of the change were the opposite, were to expand the project, I think it would still be a very live question as to whether, as approved, it is a reduction in the scale of the project. It would seem to follow that if the EIS was adequate for the larger project, then it certainly is, or almost certainly is, for the lesser project. So why we should resolve the question of whether the EIS is adequate for the larger project when we don't know how the change is going to affect it escapes me. I don't believe that any of the parties have contended that that change actually, that there has been a meaningful change with respect to several of our claims. And, you know, as we argue here, part of the concern with the change is about the foreseeability of future expansion, which is an issue that has actually been made more pertinent rather than less by the change in design. We argued in Case 10-45 that it was foreseeable that the output per liquefaction unit would increase and that the company would seek to use that increased capacity. The change in design emphasizes that that is exactly as possible as we said before, that they can produce the authorized volumes with only five units, but the design is still a place for, and they have continued to inform investors and the public that they may build a sixth train and therefore increase the output. So all of those concerns about increasing... I think it's pretty clear in FERC's view that any increase in output is not authorized under this EIS, has not been, I mean, it will require its own analysis. FERC's view is that they have not yet authorized an increase in output. Our claim is that regardless... DOE hasn't authorized it, isn't that right? That's correct as well. So it can't happen. I mean, when it happens, it's got to be subjected to an EIS analysis. Well, our claim is that the authorized design for the Rio Grande project, which is of Case 10-45, it includes infrastructure that can only be justified for an increase in output later on. That the terminal footprint, which includes filling about 200 acres of wetlands, includes space for a sixth liquefaction unit, the only justification for which would be to do an increase in output. If you weren't going to build a sixth unit and you didn't plan on increasing output, you could build a smaller facility that wouldn't require filling all 200 acres of wetlands, among other construction effects. So that's what we're trying to do. If FERC is authorizing that wetlands destruction now, and the only justification for that wetlands destruction is to lay a foundation for a future increase in output, then FERC needs to consider the consequences of that future action now, even though FERC hasn't actually authorized building on the foundation and completing the sixth train until a future proceeding. Am I correct in recalling that they said that in light of the space created by going from six to five, that that space will be used for the construction equipment and so on? While they have that empty space, they will put the construction equipment there, but there's no suggestion that they actually need that space or that they couldn't shrink the footprint if they weren't going to save space for a sixth train. And you can see that because when they originally proposed the design, they weren't filling a whole bunch of extra wetlands to make construction space for while they built the sixth train originally. They don't need that much extra space just for staging and construction. Can I ask you a question about the ozone issue that cuts across both cases to some extent, and in particular, just hypothetically speaking, I know you resist the premise, but just bear with me for a second. Hypothetically speaking, if I thought that the treatment of the re-hearing order, but that treatment hasn't been necessarily incorporated expressly or made its way over to the orders in Texas, and let's just assume it was in the case for now in Inova, then where am I at that point? Because it seems it's cumulative impacts of three projects. All three projects have been kind of linked throughout this. In fact, the orders were issued on the same day. And is there something to be done if there wasn't a sort of express incorporation, but the analysis is pretty apparently applicable to all three, since after all, we're talking about cumulative impacts? I think we would strongly resist the premise that the Rio Grande analysis was sufficient. We have not argued that there's a meaningful difference between the analysis for Inova and Texas versus the Rio Grande analysis. I agree that they didn't fully articulate it in the other cases, but we are not asking this court to strike the Inova or Texas analysis for some reason separate from the Rio Grande, the flaws in the Rio Grande analysis. I see. Okay. Yeah. And I so for your purposes, if we were to think that the Rio Grande treatment of cumulative impacts was enough, you don't have an independent claim that nonetheless, the lack of the express incorporation in Texas Inova is something that is actionable because presumably the same analysis will just be then stamped over. And that's correct. Okay. I see that I'm into my rebuttal time. It's up to you. Let me make sure my colleagues don't have additional questions for you at this time. I mean, you've got another 10 minutes in the other case too, anyway, but we'll give you rebuttal time in this case as well. All right. When you say this case, are we on 1045? We are on, not yet. We're on 43 and 1045. Yeah. Yeah. Exactly. But Mr. Matthews, I think he's arguing in both cases and therefore. Distinction is elided a bit. Yes. Yeah. Okay. Well, I think my questions can all be raised under the flag of the other case. So, so can mine, I think. Good. Well, we will give you a little bit of rebuttal time for this case too, Mr. Matthews, but why don't we hear from the commission at this point? Thank you. Mr. Edgar. Thank you, your honor and may it please the court. I'm Scott Edgar with the Federal Energy Regulatory Commission. And I just want to pick up a bit with the issue of the ramifications of ANOVA's announcement. And I do want to make clear that the commission stands by its orders in the Texas LNG case. And I'm glad to talk about those orders. The cumulative effects analysis that did in that case was appropriate, complied with NEPA at the time the commission did that environmental analysis. And that continues to be true today. I think I heard my friend on the other side, logically concede that the cumulative effects analysis, the cumulative effects must have been reduced, but that isn't the reasoning that I'm necessarily asking this court to affirm the orders. We believe that those orders were correct at the time they were issued. And I'm glad to talk about further details of the, the issues. So just to be clear, the commission doesn't intend to revisit the EIS based on this action yesterday of the withdrawal of the ANOVA facility. If your honor is referring to the EIS in Texas LNG, that is correct, your honor. The commission that environmental impact statement and stands by those orders as it pertains to Texas LNG. Well, but on cumulative impacts, so in the Texas order and the ANOVA order, since we've got those cases together, I know that ANOVA might well go away, but on cumulative impacts, there's just nothing in those orders on cumulative impacts on ozone. There's a reference to it in the discussion about communities. And there is an analysis in the Rio Grande order, but there's just nothing in these orders, right? That's not quite right, your honor. I would in particular point your honor to a director, your honor's attention to paragraph 50 of the Texas LNG rehearing order. This is at JA 697. And in that paragraph, the commission explicitly incorporates paragraphs from Rio Grande rehearing order, particular paragraphs 51 to 56 and 61 to 62. And this is the ozone analysis that we've been talking about. That is explicitly incorporated in these orders here. And remind me, this is the ANOVA order or the Texas order? That's Texas. I can provide ANOVA as well. But the same thing is in both of them. Yes, your honor. Paragraph 50 and the Texas LNG rehearing order that's at JA 697. And I can, I'm going to leave out the ANOVA sites. Where is the incorporation? I don't understand how this is an incorporation because all it says is, this is the reference. It says in the order on rehearing for Rio Grande, the commission estimated the cumulative emissions could result in ozone concentrations of 76.5 that would exceed the max. And then there's just no analysis of that at all. It's just a statement about what's said in Rio Grande. I take your point. It would have been perfectly straightforward just to say, and for the reasons set forward in the Rio Grande order, the cumulative impacts, we don't think pose an issue with going forward with this project, but it just doesn't do that. It just goes on then to talk about the impact on minority and low-income populations, which is a different issue. It's related, but it's a different issue. I do think it's incorporated there. I think also there are some, I do want to point out that the ozone analysis for this project, Texas LNG, wasn't required under the Clean Air Act, under the requirements for the prevention of significant deterioration. So an ozone analysis wasn't actually necessary for this project or ANOVA. But again, I think that's the, and the other thing I would add- Don't you think you at least have to engage with cumulative impacts in this order? I do want to point out, Your Honor, that the rehearing requests did not specifically address ozone outside the context of environmental justice. I didn't read you to actually be making a jurisdictional argument that this argument is not properly before us. I think one of the interveners did, but are you saying that? Yes, and I think the commission pointed out that- Did the commission make a jurisdictional argument in its brief? I didn't think so, but I might be misremembering. We pointed out in our brief, I'm looking for the reference. We pointed out in our brief that Sierra Club didn't raise the ozone issue outside the context of environmental- I think you might've made an observation to that effect, but did you actually make a jurisdictional argument? I didn't understand it. I don't ever remember you citing the- anything that said that we didn't have jurisdiction over it because it wasn't properly flagged for rehearing, but I might well be misremembering. Just correct me if I'm wrong. No, I don't think I fully developed the argument, but just observed that it was raised, and that just goes- We did say- Did you not say, I thought you did, that therefore it wasn't properly before the court? I don't know that we said- I don't think so. I don't recall that. Not even that, okay. I don't recall it, but I believe one of the interveners made the argument, the intervener made the argument, but I don't know that the commission did, but in any event, I don't mean to derail- I raise that, Your Honor, to explain why the order is developed this way and why there isn't a separate section, but I do stand by the argument that this analysis was incorporated in these orders, the ozone analysis, the cumulative ozone effects analysis in the Rio Grande case. I mean, it just may be a formalism. I take the point that it was done in Rio Grande, but it would have been so easy to do something other than mention the stat, the 76.5 number from Rio Grande and then do nothing else because I think a person who's not well-versed in all this wouldn't necessarily know that the commission's even relying on what the answer was in Rio Grande as opposed to flagging the emissions level. I would emphasize as well that the commission didn't just- from Rio Grande. The commission also relied on that here specifically and obviously in the environmental justice section, which is where it came up in the hearing requests. And I guess just to have you on record with respect to whether the notice we got yesterday of the withdrawal of the Inova facility, does that affect either mootness or rightness of this petition? What is your position? And when your honor refers to this petition, Texas LNG? Texas is, yes. The answer is it doesn't affect that case. The commission absolutely stands by the environmental review that it engaged in that case and stands by the orders issued as well. Are you aware of any similar possibility with respect to either Texas or Rio Grande in terms of a withdrawal? I am not. I am not. And I was not aware of the other one as well. But I'm aware that as far as I know from this record, these projects are moving forward. Thank you. Unless there are any other questions? Well, is this an appropriate time? Do you have some time left, I think? I do. So is it an appropriate time to talk about the social cost of- Yes. What do I mean? Yeah, I have another question on that too. But yeah, yes, please, Doug. Yeah. Let's begin with this. I understand that the regulation that triggers Sierra Club's argument about this subject has been, I'm not sure if it was rescinded or amended as of September 14. Do you know the answer to that?  I'm not sure which regulation- Oh, I'm sorry. It's the- I think it's 1502.22. 1502.22. The question didn't address- I'm sorry. It's in the CEQ regs, 1502.22. What is the status of that? That has been amended. The commission doesn't contest that we're dealing with the regulation as it existed at the time. What happens if we remand this case? You apply a regulation that's been amended or rescinded instead of the one that's now in place? It doesn't make sense to me. I think that's probably correct. If the case is remanded, that would be up to the commission upon remand. Do you know in what respect it was amended? I don't know the substance. I believe the number is different. It's, I believe, 1502.21. The commission didn't address this regulation in its orders here. And the commission has held in previous cases that it doesn't apply in this context. And I would point your honors to Dominion Energy Cove Point, LNG. And this is volume 164, FERC, paragraph 61102. And the commission explained that this regulation does not apply in the greenhouse gas significance context where the question is ascribing significance to an impact on a particular environmental resource. Well, the commission's said that in these cases as well. And I would stand by it. What is the fact that it said it before, Thomas? Well, the commission has also stated that the information in that regulation exists here. The commission explained that there isn't a model to meaningfully help the commission decide the question of significance. But that does not mean that the commission ignored or overlooked the impacts that result from greenhouse gas emissions. Did you discuss the regulation at all in your brief? No. Why is that? I found that to be curious. I mean, the petitioner's argument is premised on this regulation in large measure. And I guess I was anticipating seeing something from the commission on the regulation. Is there a reason that it's not in the brief at all? No. I think all I can say now is that the commission has said that this doesn't apply, that this regulation doesn't apply, one. Two, that the information is provided. And the commission did explain that it doesn't have a model. And this includes the social cost of carbon that is useful for determining significance. Did the decision in which the commission said the regulation doesn't apply post-date this case? Or is it in a previous case? It predates. It's 2018. But we wouldn't have known that from your brief. What is it about the regulation that makes it inapplicable? I believe what the commission was saying was the information lacking doesn't go to the environmental impacts, but goes to a model or a standard that the commission could rely on to make a meaningful determination as to significance. I do want to emphasize, Your Honors, that the commission engaged in a robust discussion here of greenhouse gases, including the relationship between greenhouse gas emissions and the environmental consequences. And that included quantifying the emissions for this project, which informed the commission exactly the role played by these projects in the global greenhouse gas issue. I see I'm out of time. I'm glad to... Mr. Ettinger, I'm looking now at the change in the reg. It's not limited simply to renumbering, but it's not possible to determine on the fly like this whether the various word changes are significant for the purposes of this case. So, you might take a look at that while we're hearing from opposing counsel. I think it might be able to direct you more specifically. If you give me a second here. Yes, it's at... Let's see. 85 Federal Register, July 16, 2020, pages 43-304. Somewhere in that document. Thank you. Thank you, Your Honor. Thank you, Mr. Ettinger. We'll hear from Mr. Matthews. We'll give you two minutes for rebuttal in this case. I'll just note for the benefit of counsel and for my colleagues that even though the second case is going to be largely a continuation of this in certain measures, we have different counsel coming for intervener and for the commission. So, we will do our normal changeover for that case. Although, I know that you're arguing for petitioners in both cases. So, please proceed with the rebuttal in this one. Thank you, Your Honor. Just briefly on ozone. Our ozone arguments are intertwined with our environmental justice arguments. So, I agree that in our hearing request on the Texas LNG project, we addressed ozone in the context of environmental justice. But we addressed ozone and actually adequately predicting what the increase in ozone will be and who will suffer that increase is the predicate to the environmental justice argument. So, we don't contend that there's any sort of a jurisdictional problem there. We agree that the way that the commission discussed ozone was not a model of clarity. I should also note that the NEPA requires that the discussion of environmental impacts appear in the environmental impact statement. And no one here contends that FERC's environmental impact statement was actually adequate in these regards. And although this court has previously allowed FERC to secure a deficiency in environmental impact statement with initial analysis in a certificate order, here it's not even coming to the certificate order. The analysis on ozone didn't appear until we got to the actual orders in our hearing. Petitioners have focused on the substance of the analysis rather than how it was packaged. But I agree that what the commission did here was not according to the normal procedures. On social cost of carbon. Excuse me one second. If we back the ships out of this, what's left to the argument you're just describing or making? If we back the ships out of the ozone argument? What's the contribution of the ships to the ozone? Right. I do not know offhand. It's pretty clear. Where we'd be on ozone if we just back the ships out and just looked at. It seems to be pretty clear from two cases in this court that we don't take into account mobile. We don't require FERC to take into account mobile sources that are within the purview of the DOE and for which it has no control and could not prevent them. I believe that FERC or any party in this case has argued that the ozone emissions from the ships are outside of FERC's authority or obligation to consider. Really? Does the 76.5 figure that FERC used in the rehearing orders, does that encompass vessels? It does encompass vessels and vessels are about a third of the precursor emissions that get you to that. So it looks like the commission itself factored that in, at least in the figure that it came up with in the rehearing orders. And in the non-ozone analysis in the environmental impact statement, the commission had also considered vessel emissions. Okay, well, why don't we switch to the second intimately related case at this point? Unless my colleagues have further questions for you on rebuttal, you're about to stand right back up. Thank you. We'll take this case under submission.
judges: Srinivasan, Wilkins, Ginsburg